**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **RAMON CUELLAR-HERNANDEZ,** | § | |
| | § | |
| *Petitioner*, | § | |
| **v.** | § | |
| | § | |
| **MARY DE ANDA-YBARRA,** *in her official capacity as* Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement; | § | **EP-26-CV-00375-DCG** |
| **WARDEN,** ERO El Paso Camp East Montana Detention Facility, | § | |
| **TODD M. LYONS**, *in his official capacity as* Acting Director, Immigration and Customs Enforcement; | § | |
| **MARKWAYNE MULLIN,** Secretary, U.S. Department of Homeland Security; | § | |
| **TODD BLANCHE,** Acting U.S. Attorney General; | § | |
| *Respondents*. | § | |

## <u>ORDER GRANTING PETITION</u>

Petitioner Ramon Cuellar-Hernandez challenges his immigration detention while the

government facilitates his removal from the United States.[1]  Among other things, Petitioner

argues that uncertainty regarding when (or whether) the government will remove him from the

---

[1] *See generally* Am. Pet., ECF No. 2.

country requires his release.[2]  Respondents, on the other hand, insist that Petitioner's continued

detention is lawful.[3]

For the following reasons, the Court **GRANTS** the Petition **IN PART** and **ORDERS**

Respondents to release Petitioner from custody.

## I.      INTRODUCTION

Petitioner is a Mexican citizen who most recently entered the United States in 2013.[4]  At

or around that time, he was convicted of illegal re-entry of a deported alien and sentenced to

twenty-four months in prison and three years of supervised release.[5]

On December 21, 2016, an Immigration Judge ("IJ") ordered Petitioner removed, albeit

with a "withholding of removal" to Mexico under the Convention Against Torture.[6]  That

withholding of removal prohibits the government from removing Petitioner to Mexico.[7]

Importantly, though, that withholding of removal ***does not*** prohibit the government from

---

[2] *See id*. at 12.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF
system, rather than the cited document's internal pagination.

[3] *See generally* Resp'ts' Resp., ECF No. 5.

[4] Am. Pet. at 5.

[5] *Id.*; Resp'ts' Resp. at 2.

[6] Am. Pet. at 6; Resp'ts' Resp. at 2–3.

[7] *See* Resp'ts' Resp. at 1.

removing Petitioner to a third country (that is, a country other than the United States or Mexico).[8]

Sometime between December 21, 2016 and September 28, 2017, the government released Petitioner under an order of supervision ("OSUP")[9]—presumably after failing to identify a third country that would accept him.  Years later, on January 30, 2026, the government revoked Petitioner's OSUP and detained him "to facilitate third country removal."[10]  As of April 29, 2026, however, the government still "[did] not have a . . . path for [Petitioner's] removal."[11]

Petitioner now seeks a writ of habeas corpus, arguing that these circumstances require his release.[12]  The Court agrees.

## II.    LEGAL STANDARD

28 U.S.C. § 2241 allows alien detainees to challenge their detention as unlawful by filing a petition for a writ of habeas corpus.[13]  To obtain their release, aliens must show—by a

---

[8] *See id.*; *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021) ("[B]ecause withholding of removal is a form of country specific relief, nothing prevents [the government] from removing the alien to a third country other than the country to which removal has been withheld or deferred." (citation modified)).

[9] *See* Am. Pet. at 6.  Respondents claim that the government released Petitioner in 2019, rather than in 2017 or late 2016.  Resp'ts' Resp. at 3.  The Court need not decide when the government previously released Petitioner because the Petition doesn't turn on that issue.  *See generally infra*.

[10] Resp'ts' Resp. at 3.

[11] Martinez Decl., ECF No. 8-1, at 2.

[12] Although Petitioner argues that several different legal theories require his release, Am. Pet. at 12–14, this Order focuses only on whether his continued detention exceeds the government's authority under 8 U.S.C. § 1231(a)(6).  *See* Am. Pet. at 12–14 (alleging violations of 8 U.S.C. § 1231(a)(6)). Because the Court will grant the Petition on that basis, *see generally infra*, it need not address Petitioner's administrative or constitutional claims, *see* Am. Pet. at 12–14.  *See Fleming v. Collins*, 917 F.2d 850, 852 (5th Cir. 1990) ("Because we grant habeas corpus [relief] . . . on the first ground, we need not reach the other claims [petitioner] raises.").

[13] 28 U.S.C. § 2241(c); *see also Zadvydas*, 533 U.S. at 699 (citing 28 U.S.C. § 2241(c)(3)).

preponderance of the evidence[14]—that they are "in custody in violation of the Constitution or laws or treaties of the United States."[15]

## III.   DISCUSSION

### A.   Governing authorities

#### 1.   Section 1231(a)

Section 1231(a) governs detention of aliens who are ordered removed from the country.[16] Once a removal order becomes final, Section 1231(a)(1) provides the government ninety days to secure removal.  This is known as the "removal period," during which detention is mandatory under the statute's plain text.[17]

As this case illustrates, though, not all aliens are removed during the removal period. Section 1231(a)(6) authorizes the government to detain certain aliens—including Petitioner here—beyond the removal period.[18]  Notably, however, Section 1231(a)(6) doesn't expressly limit how long the government may detain the specified classes of aliens:

---

[14] *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

[15] 28 U.S.C. § 2241(c).

[16] *Zadvydas*, 533 U.S. at 682.

[17] *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General ***shall*** detain the alien." (emphasis added)); *see also Zadvydas*, 533 U.S. at 683 (2001) ("After entry of a final removal order and during the 90–day removal period, however, aliens must be held in custody . . . .").

[18] *See infra* note 19 and accompanying text.

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to . . . terms of supervision . . . .[19]

### 2.   *Zadvydas v. Davis*

That doesn't mean that the government's Section 1231(a)(6) detention authority is unlimited.  In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6) authorizes the government to detain an alien indefinitely.[20]  There, the government continued detaining two aliens past the removal period based on their criminal histories.[21]  The government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions without a foreseeable end in sight.[22]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[23]  Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited

---

[19] *See* 8 U.S.C. § 1231(a)(6) (emphasis added).

[20] *Zadvydas*, 533 U.S. 678.

[21] *See id*. at 684–86.

[22] *See id.*

[23] *See id*. at 682.

- 5 -

discretion."[24]  The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[25]

Having determined that Section 1231(a)(6) is ambiguous, the Supreme Court weighed competing interpretations of Section 1231(a)(6)'s detention authority.  The government's interpretation would have authorized indefinite detention[26]—which, according to the Supreme Court, would raise a "serious constitutional problem."[27]  As the Supreme Court had previously explained, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[28]  Applied to Section 1231(a)(6):

(1)    the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and

(2)    if it's unlikely that the government will be able to remove an alien within the foreseeable future, detaining that alien under Section 1231(a)(6) wouldn't serve that purpose; so

---

[24] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[25] *Zadvydas*, 533 U.S. at 697 ("[I]f Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms.").

[26] *Id.* at 692.

[27] *Id*. at 690.

*See also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

[28] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *see also Zadvydas*, 533 U.S. at 690 (citing *Jackson*, 406 U.S. at 738).

(3)    interpreting Section 1231(a)(6) to authorize the government to detain aliens whose removals aren't foreseeable would raise serious constitutional questions.[29]

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[30]  As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[31]  "After th[at] 6-month period, 'if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the alien.'"[32]

### 3.    8 C.F.R. § 241.13

After *Zadvydas*, the INS incorporated the Supreme Court's holding into 8 C.F.R. § 241.13.  That regulation—which now governs ICE's operations—codifies *Zadvydas*'s holding that the government may detain an alien past the removal period only if there's a "significant likelihood that the alien will be removed in the reasonably foreseeable future."[33]

Notably, 8 C.F.R. § 241.13 also places limits on *re*-detention.  Again incorporating *Zadvydas*'s foreseeability criteria, § 241.13(i)(2) instructs that the government may "revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the

---

[29] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

[30] *Id.* at 689.

[31] *Id*. at 701.

[32] *Jennings*, 583 U.S. at 296 (citing *Zadvydas*, 533 U.S. at 701); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

[33] *See generally* 8 C.F.R. § 241.13.

[government] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[34]

### B.    Petitioner's continued detention isn't presumptively reasonable

In evaluating whether Section 1231(a)(6) authorizes Petitioner's continued detention, the Court must first assess whether his detention is presumptively reasonable—that is, whether *Zadvydas*'s six-month presumptively reasonable detention period has expired.  As this Court previously concluded, that period runs continuously from the date on which an alien's removal order becomes final—irrespective of whether an alien spends all or some of that six-month period in detention.[35]

Here, Petitioner's removal order became final on December 21, 2016,[36] meaning that his detention under Section 1231(a)(6) was presumptively reasonable through June 21, 2017. Because that six-month period has long since passed, Petitioner's continued detention isn't presumptively reasonable.

### C.    Petitioner's removal is not significantly likely in the reasonably foreseeable future

Having determined that Petitioner's detention isn't presumptively reasonable, the Court must next consider whether Petitioner's removal is foreseeable.  Under *Zadvydas*, aliens typically bear the initial burden of providing good reason to believe that there **isn't** a significant

---

[34] *Id.* § 241.13(i)(2); *see also Kong v. United States*, 62 F.4th 608, 619 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." (citing 8 C.F.R. § 241.13(i)(2))).

[35] *See Khoury v. Garite*, No. EP-25-CV-00577-DCG, 2026 WL 1179822, at *4–8 (W.D. Tex. Apr. 21, 2026).

[36] Resp'ts' Resp. at 5.

likelihood of removal in the reasonably foreseeable future.[37]   Some courts, however, have concluded that where—as here—the government re-detains an alien after revoking their release, 8 C.F.R. § 241.13(i)(2) applies and requires ***Respondents*** to show that such a likelihood of removal ***does*** exist.[38]

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention.  Even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that is less favorable to Petitioner) applies, Petitioner's continued detention is unreasonable and no longer authorized under Section 1231(a)(6).[39]

> **1.    Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future**

Under *Zadvydas*'s burden-shifting framework, Petitioner would first need to provide good reason to believe that there isn't a significant likelihood of removal in the reasonably foreseeable future.[40]  While "'[g]ood reason' is not an onerous standard,"[41] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[42]

---

[37] *See supra* note 32 and accompanying text.

[38] *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

[39] *See, e.g.*, *Khoury*, 2026 WL 1179822, at *8–9 (determining that it wasn't necessary to "resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention" because Section 1231(a) didn't authorize detention "even if *Zadvydas*'s burden-shifting framework . . . applied").

[40] *Zadvydas*, 533 U.S. at 701.

[41] *See Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[42] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

Petitioner has met his burden. Although Petitioner's removal order became final in December 2016 (nearly 10 years ago),[43] the government still hasn't removed him from the country. His withholding of removal prohibits the government from returning Petitioner to his home country of Mexico.[44] And despite having 10 years to identify a third country that will accept Petitioner, the government still hasn't found one.[45] Petitioner has therefore established good reason to doubt that his removal is significantly likely in the reasonably foreseeable future.[46]

### 2. Respondents have failed to rebut Petitioner's showing

Respondents, by contrast, haven't offered anything to suggest that Petitioner's removal is more foreseeable now than it's been at any point since the IJ ordered him removed. As Respondents admit, the government has "look[ed] for possible third country removals, but there has been no acceptance."[47] Resultingly, the government "currently does not have a . . . path for [Petitioner's] removal."[48]

---

[43] *See* Am. Pet. at 6; *see also* Resp'ts' Resp. at 5.

[44] Am. Pet. at 6;

[45] *See id.*; Pet'r's Reply, ECF No. 6, at 8–9 n.1.

[46] *See, e.g.*, *Trejo v. Warden*, 807 F. Supp. 3d 697, 705–06 (W.D. Tex. 2025) (determining that an alien met his burden where he had a withholding of removal to his home country, he didn't have ties to any other (non-U.S.) country, and the government hadn't identified a third country that would accept him); *Khoury*, 2026 WL 1179822, at *10 (determining that a petitioner carried his burden where he showed that "the removal process is in virtually the same as it was" decades prior); *Mogos*, 2026 WL 475079, at *5 (finding that a petitioner's removal wasn't reasonably foreseeable where there was "no stated progress on such removal during the [p]etitioner's continued detention"); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025) (determining that a petitioner carried his burden where "the process for procuring travel documents . . . continue[d] to be uncertain and protracted").

[47] Resp'ts' Status Update, ECF No. 8.

[48] Martinez Decl. at 2.

At this stage, it's uncertain whether there is even a third country that will accept Petitioner's removal at all—let alone in the reasonably foreseeable future.  Section 1231(a) doesn't authorize Respondents to detain Petitioner indefinitely while they pursue a removal that may never happen.[49]  Under these circumstances, Petitioner's continued detention is unreasonable and no longer authorized by statute.[50]

### D.    Scope of Relief

Because Petitioner's continued detention is no longer authorized, the Court will order his release.[51]  *Zadvydas* counsels that "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[52]  The Court therefore directs Respondents to release Petitioner under a form of supervised release that accounts for history of compliance (or non-compliance) with his prior OSUP(s).[53]

Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act (the "EAJA").[54]  The EAJA does not authorize attorneys' fees or costs in habeas proceedings like this

---

[49] *See Zadvydas*, 533 U.S. at 689.

[50] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."); *see also, e.g.*, *Trejo*, 807 F. Supp. 3d at 707 (determining that the government failed to meet its burden where no country had accepted the alien's removal); *Khoury*, 2026 WL 1179822, at *10–11 (same).

[51] *See Zadvydas*, 533 U.S. at 699–700 (contemplating an alien's release where detention is no longer authorized); *see also supra* note 32 and accompanying text.

[52] *Zadvydas*, 533 U.S. at 700.

[53] *Id.*; *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (explaining that federal courts have "broad discretion in conditioning a judgment granting habeas relief"); *Haygood v. Quarterman*, No. 07-51380, 2008 WL 3244144, at *3 (5th Cir. Aug. 8, 2008) ("Courts have broad discretion in devising habeas relief." (citing *Hilton*, 481 U.S. at 775)).

[54] Am. Pet. at 16.

one.[55] Seeing no other appropriate basis to grant this relief, the Court denies Petitioner's request

for attorney's fees and costs.[56]

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Petitioner Ramon Cuellar-Hernandez has

shown by a preponderance of the evidence that he is "in custody in violation of the Constitution

or laws or treaties of the United States."[57]

The Court therefore **GRANTS** Petitioner Ramon Cuellar-Hernandez's Amended Verified

Emergency Petition for a Writ of Habeas Corpus (ECF No. 2) **IN PART**.

The Court **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention

**UNDER SUPERVISION** <u>on or before May 4, 2026</u>.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's

release **<u>by 5:00 PM Mountain Time on May 5, 2026</u>**.

The Court **FURTHER DENIES** Petitioner's request for attorney's fees and costs.

Finally, now that Petitioner has obtained the habeas relief to which he is entitled, there

appears to be nothing further for the Court to do in this case.  The Court therefore **CLOSES** the

above-captioned case.

---

[55] *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).

[56] *Oliver v. Arnold*, 3 F.4th 152, 163 (5th Cir. 2021) ("We, of course, follow the 'American Rule' under which '[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" (citing cases)).

[57] *See supra* note 15 and accompanying text.

- 13 -

**So ORDERED and SIGNED this 1st day of May 2026.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**